## HUHN v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroads:** MASTER AND SERVANT: DEFECTIVE MACHINERY: NEGLIGENCE: PRACTICE. Where the instrumentality with which a servant is required to perform service is so glaringly defective that a man of common prudence would not use it, the master cannot be held responsible for damages resulting from its use. But, if a servant incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose it may be safely used, with great skill or care, mere knowledge of the defects on the servant's part will not defeat a recovery. Negligence on the part of the servant, in such cases, does not necessarily arise from his knowledge of the defect, but is a question of fact, to be determined from such knowledge and the other circumstances in evidence.

2. ———: ———: ———: ———. There is no obligation on the part of the master to furnish absolutely safe appliances, nor is a railroad bound to adopt every new invention, though it be an actual improvement. It is not required to discard its implements and machinery, because better have come into use. But it is the duty of the company to use reasonable care and precaution in procuring and keeping its appliances in good condition and order, and it cannot wholly disregard the improvements of the day.

3. **Negligence:** BLOCKS BETWEEN RAILS: JURY. Whether the defendant, a railroad, was guilty of negligence in not placing,

Huhn v. The Mo. Pac. Ry. Co.

for the safety of its employes, blocks between the guard-rail and the track-rail in one of its yards, was, under the evidence, a question for the jury.

4. ———: PRACTICE. Where the facts are either disputed, or different inferences may be fairly drawn from the undisputed facts, the question of negligence should be submitted to the jury.

5. Practice in Supreme Court: EVIDENCE. Where no objection was made in the trial court to the admission of evidence, the question of its admissibility will not be reviewed in the Supreme Court.

### Appeal from Jackson Circuit Court.—HON. T. A. GILL, Judge.

AFFIRMED.

*Adams & Bowles* with *Thos. J. Portis* for appellant.

(1) The court erred in admitting the opinions of plaintiff's witnesses in evidence, as to the comparative safety to employes of blocked, and unblocked, frogs and switches. *Hopkins v. Railroad*, 74 Ill. 32; *Chicago v. McGiven*, 74 Ill 347. (2) The defendant's instruction, in the nature of a demurrer to the evidence, should have been given. There was no conflict in the evidence, and nothing for the jury to find. *Cummings v. Collins*, 61 Mo. 520; *Hulett v. Railroad*, 67 Mo. 239; *Porter v. Railroad*, 71 Mo. 66; *Ranes v. Railroad*, 71 Mo. 164; *Devett v. Railroad*, 50 Mo. 302; *Smith v. Railroad*, 69 Mo. 33; *Railroad v. Londergan*, 7 N. E. Rep. 55; *Wonder v. Railroad*, 32 Md. 411; *Baldwin v. Railroad*, 50 Iowa, 680; *Osborne v. Railroad*, 68 Me. 51; *Railroad v. Flannigan*, 77 Ill. 365; *Railroad v. Gilderslieve*, 33 Mich. 133; *Railroad v. Asbury*, 84 Ill. 433; *Wills v. Railroad*, 56 Iowa, 520; *Perrego v. Railroad*, 52 Iowa, 276; *Clarke v. Fisher*, 1 Paige, 174; *Kray v. Railroad*, 32 Iowa, 357; *Randell v. Railroad*, 109 U. S. 478; *Baylor v. Railroad*, 40 N. J. 23; *Railroad v. Black*, 88 Ill.

---

| 92 | 440 |
| 146 | 282 |
| 147 | 186 |
| 76a | 226 |

| 92 | 440 |
| 81a | 130 |
| 82a | 179 |
| 82a | 370 |

| 92 | 440 |
| 155 | 385 |
| 155 | 386 |
| a156 | 244 |

| 92 | 440 |
| 159 | 478 |
| 84a | 454 |
| 85a | 493 |
| 85a | 650 |
| 86a | 149 |
| 86a | 434 |

| 92 | 440 |
| 162 | 599 |
| 168 | 319 |
| 92 | 440 |
| 166 | 464 |
| 167 | 114 |
| 90a | 35 |
| 90a | 313 |

| 92 | 440 |
| 93a | [1]163 |
| 93a | [2]215 |

| 92 | 440 |
| 94a | 379 |

| 92 | 440 |
| 172 | [1] 66 |
| 95a | [1] 24 |
| 95a | [2] 51 |
| 95a | [1]117 |
| 95a | [1]118 |
| 95a | [1]119 |
| 95a | [1]223 |
| 96a | [1]369 |
| 96a | [1]382 |
| 96a | [1]679 |
| 98a | [2]561 |
| 99a | [1]402 |
| 100a | [4]194 |
| 100a | [1]211 |

| 92 | 440 |
| 177 | 491 |

112; *Sullivan v. Manufacturing Co.*, 113 Mass. 396; *McGlynn v. Railroad*, 31 Cal. 376; *Way v. Railroad*, 40 Iowa, 159; *Williams v. Railroad*, 43 Iowa, 396.

*Gates & Wallace* and *John A. Sea* for respondent.

(1) The admission of evidence not objected to at the time is not error. *Smith v. Dunklin County*, 83 Mo. 195; *Allen v. Mansfield*, 82 Mo. 688; *State v. Lett*, 85 Mo. 52; *Harrison v. Bartlett*, 51 Mo. 170; *Miller v. Duff*, 34 Mo. 167; *Waldo v. Russell*, 5 Mo. 387. (2) The opinions of experts as to the comparative safety of a mechanical appliance are competent. *Perkins v. Stickney*, 132 Mass. 217; *Hill v. Ins. Co.*, 129 Mass. 345; *Lawrence v. Boston*, 119 Mass. 126; *Sorg v. The Congregation*, 63 Pa. St. 166; *Tucker v. Railroad*, 118 Mass. 547; *Towboat Co. v. Starrs*, 69 Pa. St. 41. This was a proper subject for opinion evidence. *Baldwin v. Railroad*, 50 Iowa, 680; *Cooper v. Railroad*, 44 Iowa, 134; *Alexander v. Sterling*, 71 Ill. 366; *Seaver v. Railroad*, 14 Gray, 466; *Porter v. Manufacturing Co.*, 17 Conn. 249; *Welsh v. Ins. Co.*, 32 N. Y. 427; *Greenwell v. Crow*, 73 Mo. 638; *Robinson v. Railroad*, 21 Mich. 141; Whart. on Evid., sec. 444. (3) Whether it is negligence for the master to furnish, or to fail to furnish, appliances of a particular kind, for the use of the servant, is a question for the jury. *Abel v. Canal Co.*, 5 Cent. Rep. No. 6, 615; *Railroad v. McClellan*, 84 Ill. 109; *Freemouth v. Railroad*, 10 Com. Bench [N. S.] 89; *Railroad v. Stout*, 17 Wall. 657; *Marquette v. Railroad*, 33 Iowa, 566; Wood's Master and Servant [2 Ed.] secs. 357-8-9, pp. 733, 741; also cases under fourth point. (4) Whether a servant waives the negligence of the master, by continuing to use dangerous appliances furnished by the master, after the servant has knowledge of the defects, is, in cases like the one at bar, a question for the jury. This is a question of contributory negli-

gence. *Snow v. Railroad*, 8 Allen, 441; *Plank v. Railroad*, 60 N. Y. 607; *Dorsey v. Construction Co.*, 42 Wis. 583; *Stoddard v. Railroad*, 65 Mo. 514; *Devlin v. Railroad*, 87 Mo. 545; *Drain v. Railroad*, 86 Mo. 574; *Petty v. Railroad*, 88 Mo. 306; *Fernandez v. Railroad*, 52 Cal. 45; *Patterson v. Railroad*, 76 Pa. St. 390; *Hawley v. Railroad*, 82 N. Y. 370; *Lasure v. Manufacturing Co.*, 18 S. C. 276; *Perigo v. Railroad*, 55 Iowa, 326; *Clayards v. Dithic*, 12 Q. B. 439; *Porter v. Railroad*, 60 Mo. 160; *Railroad v. Russell*, 91 Ill. 298; Wood's Master and Servant [2 Ed.] secs. 357–8–9, pp. 733, 741.

BLACK, J.—The plaintiff's husband, Charles Huhn, was, and for three or four months had been, defendant's yardmaster, at Independence, Missouri. It appears a freight train was about due at that place, and it became the duty of Huhn, an engineer, fireman, and switchman to set out a car for that train. Huhn directed the switchman to go forward and flag the train. The engine then, with a string of seven cars, pulled out on the main track, and stopped for Huhn to throw the switch, which he did, and then signaled the fireman to back the train; as the car which he intended to take out passed him, he stepped in between it and the one next to it toward the engine, intending to pull the pin. His foot caught between the guard-rail and track-rail, and he received the injuries from which he died. No one saw him at the moment of the accident, but his shoe was found between the rails, with the heel towards the east, the direction in which the cars were moving, showing that he was stepping backward when his foot caught. It was necessary to leave the link in the car to be cut out, and this faced him in a direction opposite to that in which the train was moving when in the act of pulling the pin.

The negligence alleged is a failure to block the guard-rail. The evidence upon this question offered by plaintiff shows that some roads, at their yards, place a

wooden block between the guard and track-rail, so as to fill the space up to the ball of the rails, leaving room for the flange of the car wheels. At least three roads block the rails, and there is evidence that this defendant does the same at its yards at Kansas City, though none of the rails were blocked at its yards at Independence. One of the witnesses, who had been in the railroad business for seven years, says it is customary for the roads in this state to block these rails, but from the evidence of other witnesses it appears that many do not. Some of the witnesses say, in emphatic terms, that it is dangerous · to work in yards where the guard-rails are not blocked, and all who profess to know anything about it agree that blocking adds to the safety of those employes engaged in switching. One witness on the cross-examination stated that spikes, nuts, and stones were liable to get in the open space, and then there would be more danger of the cars being thrown off than there would be if not blocked; and that, upon the whole, it was a disputed question among railroad men, which was best, blocking or no blocking. Another witness said he had never found one man but said blocking was proper, and safer for the employes.

The defendant offered no witnesses, and the court, of its own motion, gave the following instruction:

"Before the plaintiff can recover in this action, it must appear that the accident, resulting in the death of Charles Huhn, was occasioned by the want of ordinary care on the part of the defendant railroad company in protecting its employes, in that it failed to block the track and guard-rail at the point complained of, and that, by reason thereof, the said Huhn was killed, in the manner charged in the petition; and further, it must appear that the injury was not occasioned by the carelessness and negligence of said Huhn, which directly contributed to said injury. The ordinary care demanded of the railway company is that degree of care which ordi-

narily prudent men, in operating railroads, would, and do generally exercise, under similar circumstances, towards the protection of their employes; and as to whether or not Charles Huhn was guilty of contributory negligence, resulting in his death, it is your duty to consider what knowledge he had of the absence of a block to the said guard-rail, and, if he had knowledge thereof, whether, at the time, he was acting as a prudent man would, under similar circumstances."

Other instructions were given and refused, but they need not be set out in full.

1. The first question presented by the instruction given and refused is, whether plaintiff must fail in her suit, because her husband had full knowledge of the condition of the guard-rails in the yards, and with that knowledge continued in the service of the defendant, and was injured. Counsel for respondent intimate that there is no proof that deceased knew that these guard-rails were not blocked, but such an intimation cannot receive a moment's consideration, for he had been in the employ of the defendant, at these yards, for three or four months, was a sober, observant, and intelligent man, and that he knew of the exact condition of the guard-rails cannot be doubted.

It is often said that the servant waives his right to recover for injuries received from defective machinery and appliances, where, with knowledge of the defect, he continues to use such defective machinery or appliances; but the rule, as thus broadly stated, is not correct in its application to a large class of cases. Thus, in the case of *Snow v. Railroad*, 8 Allen, 441, three lengths of plank had been laid down between the rails across a highway; one of these planks had become defective, and there was a hole in it large enough to admit a man's foot. The hole had existed for two months, and the brakeman knew of it, and had made complaint to the track-repairer, but there does not seem to have been

any promise to repair. His foot was caught in the hole while he was engaged in uncoupling cars, and he could not get it out before the wheels of the tender ran over his leg. Upon the point in question here, the court made these observations: "Nor do we think that it was any the less a question of fact to be decided by the jury, because it appeared that the plaintiff had previous knowledge of the defect in the road, which caused the accident. * * * It may be suggested that plaintiff ought not to recover, because he continued in the performance of his duties after he was aware of the existence of the defect in the road. There may be cases where a servant would be wanting in due care, by incurring the risk of injury in the use of defective or imperfect machinery, or apparatus, after he knew it might cause him bodily harm, but we do not think this case is one of that class. His continuance in the employment did not necessarily and inevitably expose him to danger."

In *Patterson v. Railroad*, 76 Pa. St. 389, an employe was injured by improper construction of a frog. The conductor, in that case, knew it was hazardous to run cars over it, and had notified the foreman of the road of the danger, and the latter had promised to repair the same. The promise to repair, under the decisions of this court, justified the conductor in continuing in the service. But the case was not made to stand on that ground, and the court, after referring approvingly to the cause before cited, says (p. 393): "In this discussion, however, we are not to forget that the servant is required to exercise ordinary prudence. If the instrumentality with which he is required to perform his service is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting damage. In such case the law adjudges the servant guilty of concurrent negligence, and will refuse him that aid to which

he otherwise would be entitled. But where the servant, in obedience to the requirement of the master, incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable, it may be safely used by extraordinary caution or skill, the rule is different."

It has been several times held by this court, that where the instrumentality with which the servant is required to perform service is so glaringly defective that a man of common prudence would not use it, the master could not be held responsible for damages resulting from it. But if the servant incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose that it may be safely used with great care, or skill, a different rule applies. In such cases, mere knowledge of the defect will not defeat a recovery. Negligence, on the part of the servant, in such cases, does not, necessarily, arise from his knowledge of the defect, but it is a question of fact, to be determined from such knowledge, and the other circumstances in evidence. *Stoddard v. Railroad*, 65 Mo. 514; *Devlin v. Railroad*, 87 Mo. 545; *Col. Cent. R. R. Co. v. Ogden*, 3 Col. 500; *Lasure v. Manufacturing Co.*, 18 S. C. 276; *Perigo v. Railroad*, 55 Iowa, 326; *Hawley v. Railroad*, 82 N. Y. 370.

The instruction given, at the instance of the plaintiff, asserted the proposition that Huhn's knowledge of the unsafe condition of the guard-rail, if it was unsafe, would not defeat a recovery, if it was not so dangerous as to threaten immediate injury, or if he might have reasonably supposed that he could safely work about it, by the use of care and caution, and that he did use all the care incident to the situation in which he was placed. This instruction, and the one before quoted, submitted the question properly to the jury, and there was no error in refusing to give an instruction, which placed a complete defence on knowledge of the condition of the guard-

rail, and his continuance in the service of the company, after such knowledge, and after knowledge of danger attending the use of it.

2. But it is contended, by the appellant, that the demurrer to the evidence should have been sustained, because the evidence shows no negligence on the part of the defendant. There is no obligation, on the part of the master, to furnish absolutely safe appliances. Nor is a railroad bound to adopt every new invention, though an actual improvement it may be. The company is not required to discard its machinery and implements because better have come into use. But it is the duty of the company to use reasonable care and precaution in procuring and keeping its appliances in good condition and order, and it cannot remain wholly silent as to the improvements of the day.

In *Smith v. Railroad*, 69 Mo. 32, the complaint relied upon was, that the guard-rail was constructed of the T rail, when a different one would have been as serviceable, and less dangerous, and the proof was that the V rail would have been as serviceable, and, on account of its form, less dangerous to the employes. The V rail was shown to be used as a guard-rail, on one bridge, but the T rail was in general use. Some of the witnesses, though engaged in railroading for years, had never seen the V rail in use. It was held that, though the V rail would have been safer, that fact would not establish negligence, on the part of the defendant, and it was also said, there was no evidence of any negligence, on the part of the defendant. That case ought not to control the disposition of this one, for here negligence is clearly alleged, in the petition, and the proof, as to the use of blocked guard-rails, in this case, is essentially different from the evidence of the use of the V rail, in that case.

The case of the *C., R. I. & P. R. R. Co. v. Londergan*, 6 West. Rep. 63, is cited, and much relied upon, by the appellant. Some observations, made in the

opinion, when detached from the question decided, might lead to the conclusion that the demurrer, in this case, should have been sustained, but we think a fair consideration of the whole opinion will lead to no such conclusion. The plaintiff was a brakeman on the defendant's road, and it became his duty to assist in switching cars, at certain way stations. The charge was, that the defendant, negligently, failed to block the joints of a turn-out from the main line to a branch railroad. The evidence showed that some roads blocked the frogs and turn-outs, and that others did not; that with them blocked it would be hard to get the foot below the ball of the rail. One witness stated that the blocking was to keep men from catching their feet between the rails; that the necessity for something for a foot-guard was known and recognized; not half of the roads used the blocks. The case seems to have turned on the propriety of two instructions, as to one of which it is said, "The jury must have understood, from the instruction, that the railroad company was absolutely required to use blocks, in its switches and turn-outs," and, as to the other, it is said, it was not the province of the court to tell the jury that the omission to block the joints of the turn-out was a wrongful act. The judgment was reversed, and the cause remanded, and it cannot be affirmed of that case, that the court held there was no evidence of negligence on the part of the defendant.

. It is true that the question of negligence cannot be resolved, alone, upon the fact as to how many roads do, or do not, block the guard-rails. Nor can it be said, the company was guilty of negligence, simply because the blocks make it safer for the employes. These are facts, however, to receive a proper consideration from the jury. It may be that the use of blocks would be imprudent, on the main line, and quite essential in the car yards, where the employes are constantly engaged

in coupling and uncoupling cars, for, as the danger increases, the care should increase. The guard-rail, in this case, was on the side track leading to the main track. The defendant was not called upon to discard the existing rails. The defendant seems to have recognized the propriety of using the blocks in some of its car yards; there is certainly evidence that it does use them in one. They are used by some other roads, and there can be no doubt but the evidence here, in no way contradicted, shows that they add much to the safety of the employes. Where the facts are either disputed, or different inferences may be fairly drawn from the undisputed facts, the question of negligence should be submitted to the jury. *Mauerman v. Siemerts*, 71 Mo. 101; *Nagel v. Railroad*, 75 Mo. 653. We think this case comes within the rule, and the question was properly submitted to the jury.

3.    The objection made here to some of the evidence received in the cause does not appear to have been made on the trial of the cause, and no such question is, therefore, before us for consideration.

The judgment is affirmed.    All concur.