matters should be returned to us. Whatever information was before that body, either from their own observation or derived from the reports of committees or otherwise, should be returned to us, in order that this court may be able to judge intelligently of the propriety of the act which it is called upon to review. It must be remembered that this court is not called upon to decide now as to the manner in which this street shall cross the tracks of the railroad company. That is a matter for further consideration by the board of railroad commissioners when the application shall be made to them in that behalf. All that is to be decided by us is whether, in view of all the information which shall be returned to us by the common council, their action in determining to lay out this street was ill-advised, and should be reversed. To enable us to obtain this information, this writ of certiorari should be granted, returnable to this court.

---

(62 App. Div. 551.)

## GRIFFEN v. ITHACA ST. RY. CO.

(Supreme Court, Appellate Division, Third Department. June 28, 1901.)

STREET RAILROADS—INJURY TO MOTORMAN—COLLISION—KNOWLEDGE OF DEFECT—APPRECIATION OF DANGER—QUESTION FOR JURY.

> Plaintiff, a motorman, who had never operated a car with a trailer not provided with brakes and brakemen, and did not know of the effect of a heavy car without brakes run as a trailer, was directed to take a light open passenger car and draw a heavy loaded gravel car to a place on a hillside. The gravel car had no brakes, as plaintiff knew, and, when plaintiff attempted to stop where directed, the weight of the gravel car caused the other car to slide, and, though plaintiff applied the brakes, the cars collided with another car, injuring plaintiff. There was no sand on the car, the rails of the track were new, and the man in charge of the trolley pole was inexperienced, all of which plaintiff knew. *Held*, that the question whether he knew and appreciated the danger in using the car without brakes was for the jury.

Appeal from trial term, Tompkins county.

Action for injuries by Ernest Griffen against the Ithaca Street-Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Samuel D. Halliday and D. F. Van Vleet, for appellant.
Tompkins, Cobb & Cobb, for respondent.

CHASE, J. The plaintiff is a man now about 25 years of age. In June, 1896, he entered the employ of the defendant, and acted as a car conductor for it for about two years. He then became a motorman, and continued in that position for about a year and a half, and until the 1st day of September, 1899. On that day he was injured in a collision between cars of the defendant company, for which injury this action is brought. The acting superintendent of the defendant directed the plaintiff to go to the barn, and take a car, and go to a place where workmen were engaged in laying new rails, and, as soon as the rails were connected, to get an open summer passenger car

that was lying in a cut near that place, and bring it down, and, after he had brought it down, then to take the open car, and with it get a gravel car that had just been constructed by the defendant, and go over the hill, and get a loan of gravel. The superintendent also directed one Hasset, who was working with some Italians completing the track, to go over with the plaintiff on the heights to load the gravel. The plaintiff did as he was directed, and, after the gravel was loaded by Hasset and his men, they started back with the same, and when near the place where the gravel was to be unloaded, and at the height of a steep grade, and while the cars were moving very slowly, Hasset jumped off the car, and directed plaintiff where he should stop for the purpose of unloading the gravel on the hillside, when suddenly, and without any reason except the weight of the gravel car, the passenger car began to slide. The plaintiff set the hand brakes, reversed the power, and, not being able then to control the car, dropped the emergency brakes, which consist of rough emery faced shoes onto which the wheels run; but the momentum was such, by reason of the weight of the loaded gravel car behind the passenger car, that the cars increased in speed for a long distance, and until they crashed into a passenger car that was unable to make its escape in advance of them. When the collision took place, the dashboard, together with the brakes and apparatus on the front of the car, were pushed over, and plaintiff was pinned between such broken parts of the car and the passenger seat facing the same, and received the injuries of which he complains.

Many of the important facts in this case are conceded, or not seriously disputed. There was no sand in the sand box on the passenger car, and no apparatus by which the same could be delivered through the box upon the track if the box had been supplied with sand. The passenger car was fully equipped in every other particular. The man on the passenger car in place of the conductor, and in charge of the trolley pole, was a man who had had very little experience. The gravel car was a heavy one, constructed by the company, and did not have brakes of any kind, and there were no men on said car to aid in any way in handling the same. The rails at the point where the car began to slide were new ones. The plaintiff knew that the defendant did not have sand in the sand boxes of any of its regular cars at this time, nor during any of the summer months. He also knew that there was no apparatus connected with the sand box on the car that he was running for the purpose of using sand therefrom. The man that was in charge of the trolley pole on the car that he was running had never had any experience, to his knowledge. He knew that the rails where the car commenced to slide were new ones, and his experience was such that he knew the relative resisting power of new and old rails when the brakes were applied. He knew that the gravel car did not have any brakes, and that there was no one in charge of such car. The plaintiff was not negligent in handling the car. That he did everything that was in his power to hold the car on the hillside, and to stop the same after it began to slide, is not seriously disputed. Any testimony to the contrary seems to be fully overcome by the fact that when the car was stopped the ordinary

brakes were properly set, and the emergency brakes were under the wheels, all in exactly the same position that they would have been in if the plaintiff had fully carried out the instructions that had been given him, as he says that he did. It was negligence for the defendant to send out the gravel car to be used on the steep grades of their roads without brakes, and without men in charge of such brakes. The defendant insists that the plaintiff was fully aware of all of the defects of which he complains, and of the dangers incident to such defects, and that he voluntarily assumed the risk, and is, consequently, not entitled to recover herein. It is undoubtedly true that every employé assumes the risks incident to his employment, and not only risks that are incident to the employment, but all other risks that are visible, and of which he has as much knowledge as his employer. The immediate cause of the accident was the heavily-loaded gravel car, used without brakes, immediately behind a light, unloaded passenger car. The only question for consideration is whether the plaintiff appreciated, or ought to have appreciated, the danger incurred in running the gravel car without brakes, and whether the defendant had, or ought to have had, superior knowledge to that of the plaintiff in regard to the danger connected therewith. If the plaintiff had ever run a trailer behind his car prior to that time, it was another passenger car, fully equipped with brakes and brakemen. He had never run a car with a trailer like the gravel car before. In fact, this was the first time that this gravel car had ever been run. He had had no experience whatever with reference to the effect of a heavy car without brakes, run in connection with a passenger car. There had never been anything in connection with his business or work that would give him any experience or knowledge in reference thereto except his work for the defendant as stated. The defendant was running a street-railway system with heavy grades. Its superintendent either had, or should have had, experience as an engineer sufficient to appreciate the dangers incident to the business, and to enable him to know what was necessary in providing apparatus that would be reasonably safe for its employés. The lighter the car handled by the plaintiff, the less power the emergency brakes thereon would have in holding the same as against this heavy car in the rear. The superintendent, as a witness on the stand, seemed not to have appreciated the principles relating thereto. In his direct testimony he emphasizes the fact that the car run by the plaintiff was one of their lightest open cars, and on cross-examination he repeats that the car was a very light one, and the following questions and answers appear:

"Q. I suppose, if that car itself had been loaded with passengers, and the brakes were applied, and the safety brakes were used, you could get a greater friction on the track, and you could stop more easily than a car would without a load. The load was behind, is that true? A. I couldn't say as to that. Q. If the load was upon this car, so that this car was carrying the load, and the brake was applied, it would be heavier upon the tracks, wouldn't it? A. I couldn't say as to that. Q. If those safety brakes were put under, and the load was right above them, there would be more friction, would there not? A. On what,—on the safety brakes? Q. There would be more friction, the load being right over those brakes,—you could stop the car the easier than you could with the load being in the rear, pushing it along? A. Possibly so."

There is abundant authority for holding that it is not enough, as. a matter of law, to charge a servant with the risk of using a machine or appliance, to show that he saw the defect, but it is also necessary to show that he knew, or ought to have known, the danger of the defect. Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573. Where there is a doubt whether the employé was acquainted, or ought to have made himself acquainted, with the risk, the question of his negligence in this respect is for the jury. Whart. Neg. § 217. In discussing this question in Kain v. Smith, 89 N. Y. 385, Judge Danforth says:

"It is said the plaintiff might also see the defects. True, but he did not know the effect of such deficiency, and was, moreover, directed by his superior to get and use the implement; and whether, under those circumstances, he should be charged with knowledge, and with negligence by reason of it, was also for the jury."

The superintendent of the defendant, for some unaccountable reason, not only sent the plaintiff out on work not connected with his ordinary employment, to draw a heavy car without brakes, but directed him to go and get the lightest car they had; thus materially increasing the risk. It does not appear that the plaintiff had any appreciation of the hazard of the undertaking, particularly with such a light car. The words of Judge Earl in Hawley v. Railway Co., 82 N. Y. 370, are applicable here. In discussing the case he says:

"While the plaintiff knew that the road was somewhat out of repair, and that he incurred some danger in running his engine, it does not appear conclusively that he knew how badly it was out of repair, or that the danger was imminent, or very great. * * * We must take into account the plaintiff's position. His business was that of an engineer, and, unless he obeyed orders, and ran his engine, he would have been obliged to abandon its service. Of one thus situated the law should not be too exacting. We must assume that the officers of defendant who had charge of the road, and must have known its condition, deemed it safe, and the plaintiff had a right to rely somewhat upon their judgment. * * * Under such circumstances, was the plaintiff bound to set up his judgment against that of all others, and determine for himself that the road was absolutely unsafe for the passage of his engine, and abandon his position as engineer, or take upon himself the risk caused by defendant's negligence? We think, under all the circumstances, and upon all the evidence given upon both sides, that it was a question for the jury to determine whether the plaintiff acted with reasonable prudence and discretion in venturing to run his engine over the road. * * * The plaintiff, on the occasion of the accident, ran his engine * * * by the express orders of the defendant. It would be a very unjust rule which would allow a master to shield himself from responsibility from the consequences of his own negligence by alleging those acts not inevitably or imminently dangerous to have been negligent which his servant performed by his express orders. Whether, in this case, the running of the engine was inevitable or imminently dangerous, was certainly a question for the jury."

The plaintiff testifies that he believed that he would be able to control both of the cars by the use of the brakes on his car. We are of the opinion that, notwithstanding the fact that the plaintiff knew that there were no brakes on the gravel car, nevertheless there still remained a question of fact as to whether the plaintiff knew and appreciated the danger in using such gravel car without brakes, and also whether the defendant did not or should not have had superior knowledge to the plaintiff in regard to such danger.

The case was fairly submitted to the jury. The defendant made no requests to the court to charge the jury in regard to any matter in connection therewith, and took no exceptions to the charge as made. The verdict of the jury was a moderate one, and, in our judgment, should be sustained.

Counsel for the appellant stated in his argument that he did not care to have this court examine the questions relating to the admission or rejection of evidence, and, unless we were willing to hold that, on the evidence, the plaintiff is not entitled to recover as a matter of law, he joined with the respondent in asking that the judgment appealed from be affirmed.

Judgment and order unanimously affirmed, with costs. All concur.